UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Yetha Idriss Lumumba,

   Plaintiff,

   v.           Civil Action No. 1:13-cv-81

Elijah Green, Northwest State
Correctional Facility, Michael Beyor,

   Defendants.

**<u>REPORT AND RECOMMENDATION</u>**
(Doc. 12)

   This is one of three cases filed in 2013 by *pro se* Plaintiff Yetha Idriss Lumumba

under 42 U.S.C. § 1983 seeking damages for injuries that he suffered in attacks by fellow

inmates.  The two other cases are now closed.[1]  In this case, Lumumba alleges that, on

April 5, 2012, while at the Northwest State Correctional Facility's ("NWSCF")

gymnasium, he was hit on the head with a basketball, and that after Lumumba had

walked off the basketball court, Defendant Elijah Green punched him on the jaw.  (*See*

Doc. 5 at 5–7.)  Lumumba also alleges that, after the assault, NWSCF officials took him

to the infirmary, and that Living Unit Supervisor Michael Beyor told him not to tell

---

[1] In *Lumumba v. Marquis*, Plaintiff brought suit for a November 7, 2011 attack perpetrated by inmate Cleon Hunter.  The Court dismissed that case without prejudice.  *Lumumba*, No. 2:13-CV-69, 2013 WL 5429429, at *1 (D. Vt. Sept. 30, 2013).  In *Lumumba v. Mack*, Plaintiff brought suit for an October 13, 2012 attack perpetrated by inmate Haywood Mack.  That case has also been dismissed without prejudice.  *Lumumba*, No. 1:13-cv-158-jgm-jmc, 2013 WL 5915195, at *1 (D. Vt. Nov. 5, 2013); *see also id.*, Order of Dismissal (D. Vt. Jan. 9, 2014).

anyone what had happened.  (*Id.* at 8.)  Lumumba seeks $357,500 in damages and an order prohibiting Green from being in Lumumba's presence.  (*Id.* at 3.)

Defendants NWSCF and Michael Beyor (the "State Defendants") have moved to dismiss, arguing Eleventh Amendment immunity, lack of personal involvement, failure to allege deliberate indifference, and failure to state an Eighth Amendment claim.  (Doc. 12 at 3–7.)  The State Defendants also argue that NWSCF should be dismissed because it is not a "person" within the meaning of 42 U.S.C. § 1983.  (*Id.* at 7–8.)

For the reasons that follow, I recommend that the State Defendants' Motion to Dismiss (Doc. 12) be GRANTED and that Lumumba be granted leave to amend.  I further recommend that, on its own motion, the Court DISMISS Lumumba's § 1983 claim against Green, and await Lumumba's decision as to whether to file an Amended Complaint before addressing any state-law claims that Lumumba might be asserting against Green.

## Factual Background

Lumumba's allegations are as follows.  Before the April 5, 2012 assault, Elijah Green had followed Lumumba around.  During prior basketball and work-out activities, Green made "numer[]ous susp[i]cious" statements.  (Doc. 5 at 5.)  On April 5, 2012, Lumumba was in the NWSCF gymnasium using the leg press bench to work out when a basketball hit him on the head.  He felt some dizziness from the impact.  Lumumba asked one of two nearby inmates if he saw who threw the ball, but received no answer.

Lumumba then left the leg press bench to play basketball.  As he talked with one of the team captains to get on the roster, Green "measured up" to Lumumba and subjected him to "strong intimidation."  (*Id.*)  Lumumba asked him to mind his own business.  Later, when Lumumba had walked off the basketball court, he heard footfalls behind him and glanced back, and at that moment Green "sucker punched" him on his left jaw.  (*Id.* at 5–6.)  Lumumba's head snapped back and he fell, striking his head on the basketball court floor.  He was "knocked out cold."  (*Id.* at 6.)

NWSCF officials Jansen R. Satterlee and Recreation Coordinator "Mark" were a few feet away from where Lumumba collapsed.  Green lied to the officials, pretending like nothing had happened.  Lumumba recovered consciousness, blinking his eyes.  His feet and legs were shaking, his hands and arms were unstable, and his neck and one of his teeth hurt.  He was unable to get up and walk without assistance from Satterlee and Mark.  Numerous officials escorted Lumumba to the infirmary.  On the way to the infirmary, Living Unit Supervisor Michael Beyor told Lumumba not to tell anyone what had just happened.

Lumumba needed to get stitches inside his mouth as a result of his injuries; one of his teeth was also broken.  Later, Green continued to "stalk" Lumumba at various locations around NWSCF, including the law library, the gymnasium, the cafeteria, the yards, and around the units.  (*Id.* at 8.)  Green continued to attempt to move as close to Lumumba as he dared.  According to Lumumba, Green would always be "sli[n]king behind me while walking, jogging near my presence to intimidate me."  (*Id.* at 6.)

Lumumba did not know why Green was always around, and feared that Green might attack him again.

Lumumba states that he employed the state prisoner grievance procedure to present the above facts to prison authorities.  According to Lumumba, he pursued his grievances to the final step, but has not received a satisfactory result.  (*See id.* at 2.)

## Discussion

## I.    Legal Standard Governing State Defendants' Motion to Dismiss

To survive a Rule 12(b)(6) motion, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed. R. Civ. P. 8(a)(2).  In *Iqbal*, the Supreme Court set forth a "two-pronged" approach for analyzing a motion to dismiss.  556 U.S. at 679.  First, a court must accept a plaintiff's factual allegations as true and draw all reasonable inferences from those allegations in the plaintiff's favor.  *Id.* at 678.  This assumption of truth does not apply to legal conclusions, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

Second, a court must determine whether the complaint's "well-pleaded factual allegations . . . plausibly give rise to an entitlement to relief."  *Id.* at 679.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678 (citing *Twombly*, 550 U.S. at 556–57).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant

4

has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).  In *pro se* cases, courts must "liberally construe pleadings and briefs submitted by *pro se* litigants, reading such submissions 'to raise the strongest arguments they suggest.'" *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir. 1994)).  Nevertheless, a *pro se* plaintiff's complaint must still state a claim to relief that is plausible on its face.  *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013).

Lumumba has filed no opposition to the State Defendants' Motion to Dismiss, but his failure to do so does not by itself warrant dismissal.  The Court is still required to review the Motion and determine whether the Complaint is sufficient to state a claim on which relief can be granted.  *McCall v. Pataki*, 232 F.3d 321, 322–33 (2d Cir. 2000).

## II.   NWSCF is Not a "Person" Under § 1983

The State Defendants assert that Lumumba's § 1983 action against NWSCF must be dismissed because NWSCF is not a "person" within the meaning of § 1983.  Indeed, one requirement for an action brought under § 1983 is that a "person" acting under color of state law deprived the plaintiff of a federal constitutional right.  42 U.S.C. § 1983.  A prison facility such as NWSCF is not a "person" under § 1983 and cannot be a defendant in a § 1983 suit.  *See Gauthier v. Kirkpatrick*, No. 2:13-cv-187, 2013 WL 6407716, at *15 (D. Vt. Dec. 9, 2013) (Northeast State Correctional Facility is not a "person" within the meaning of § 1983); *Brady v. Chittenden Corr. Facility*, No. 5:12-CV-41, 2012 WL 5929950, at *3 (D. Vt. Oct. 18, 2012) (same conclusion as to the Chittenden Correctional Facility), *adopted*, 2012 WL 5935702 (D. Vt. Nov. 27, 2012).  For that reason, the Court

should GRANT the State Defendants' Motion with respect to Lumumba's § 1983 claim against NWSCF.[2]

## III.   Defendant Michael Beyor

The State Defendants correctly point out that the Eleventh Amendment bars Lumumba from recovering money damages against Beyor—a state official—in his official capacity.  *Ford v. Reynolds*, 316 F.3d 351, 354 (2d Cir. 2003); *see also Martin v. Pallito*, No. 1:13-cv-70-JGM, 2013 WL 6528512, at *3 (D. Vt. Dec. 10, 2013).  Accordingly, the Court should GRANT the State Defendants' Motion with respect to Lumumba's § 1983 damages claim against Beyor in his official capacity.

In addition, the State Defendants' Motion to Dismiss any claim for money damages against Beyor in his individual capacity should be GRANTED for the reasons described below.  It is true that "[a] prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment," and can give rise to a failure-to-protect claim.  *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).  Whether the risk of harm is "sufficiently serious" is evaluated using an objective standard; whether the official was deliberately indifferent is a subjective inquiry.  *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999).

---

[2] Since NWSCF is an arm of the State of Vermont, Lumumba's claim against NWSCF might be construed as a claim against the State.  To the extent that it is, any such claim for damages in federal court is barred by the Eleventh Amendment.  *See Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002) (claims for damages against the Attica Correctional Facility and the State of New York were barred by the Eleventh Amendment).

Here, there are no allegations in the Complaint that Beyor was aware that Green might attack Lumumba or that Beyor was otherwise directly involved in the assault.  In fact, it does not appear from the Complaint that Beyor was even present at the time of the attack.  Moreover, Lumumba does not allege any facts that might form the basis of any supervisory liability for the injuries that Lumumba sustained in the attack.  There are no allegations that Beyor should be liable for the attack because he: (1) failed to remedy some wrong after being informed of a violation; (2) "created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom"; (3) "was grossly negligent in supervising subordinates who committed the wrongful acts"; or (4) "fail[ed] to act on information indicating that unconstitutional acts were occurring."  *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

To the extent that Lumumba seeks damages from Beyor for failing to protect Lumumba from the April 5, 2012 attack, the lack of such allegations is fatal.  Damages under § 1983 are not available against defendants who were not personally involved in the alleged constitutional deprivation.  *Costello v. City of Burlington*, 632 F.3d 41, 48–49 (2d Cir. 2011); *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994).  Similarly, the Complaint does not contain any allegations that would support a conclusion that Beyor was aware of any risk of harm posed by Green, or that he was deliberately indifferent to that risk.  *See Farmer*, 511 U.S. at 837 (to be liable under the Eighth Amendment, an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference").

7

The Complaint's only direct allegation with respect to Beyor is that, on the way to the infirmary, Beyor told Lumumba not to tell anyone about the attack.  Even assuming that Beyor's statement to Lumumba violated some constitutional right, Lumumba does not allege that Beyor's statement caused him any injury.  The Second Circuit has explained that "in all § 1983 cases, the plaintiff must prove that the defendant's action was a proximate cause of the plaintiff's injury."  *Gierlinger v. Gleason*, 160 F.3d 858, 872 (2d Cir. 1998).  Here, Lumumba had already sustained injuries from Green's attack when Beyor allegedly made the statement.  It could not have been the cause of Lumumba's physical injuries, nor does Lumumba articulate any other injury that might have been caused by Beyor's alleged statement.

The Complaint also alleges that after the attack, Green "stalked" Lumumba and that Lumumba feared that Green might attack again.  But even assuming that Beyor acquired knowledge of Green's conduct (in the course of Lumumba's grievances, for instance), the Complaint lacks any allegation that Lumumba has suffered any physical injury as a result.  By itself, any fear of another attack does not constitute "serious harm." *See Cruz v. Hillman*, No. 01 CIV. 4169 DABDF, 2002 WL 31045864, at *8 (S.D.N.Y. May 16, 2002) ("[F]ear of assault does not constitute a 'sufficiently serious' injury sufficient to state a claim under the Eighth Amendment.").  Moreover, absent any claim of physical injury arising out of Green's alleged "stalking" behavior, Lumumba cannot recover for any mental or emotional injury.  *See* 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing

8

of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18).").

In addition to money damages, Lumumba seeks injunctive relief.  Namely, he requests an order prohibiting Green from being in Lumumba's presence.  (Doc. 5 at 3.) The Supreme Court in *Farmer* made it clear that, where a plaintiff requests injunctive relief to prevent a substantial risk of serious injury, he need not wait until he is in fact assaulted before any such relief is afforded.  *Farmer*, 511 U.S. at 845.  To obtain injunctive relief, Lumumba must show that Beyor has "knowingly and unreasonably disregard[ed] an objectively intolerable risk of harm, and that [he] will continue to do so" and Lumumba must also "demonstrate the continuance of that disregard during the remainder of the litigation and into the future."  *Id.* at 846.

As to the objective standard for injunctive relief, the Complaint seems to allege that Green—who has already attacked Lumumba once—is always near Lumumba, and is "stalking" him.  The Complaint does not include any other details as to whether Lumumba is facing an objectively intolerable risk of harm,[3] and at least based solely on the allegations in the Complaint it could arguably be premature to conclude otherwise. *Cf. Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (concluding that an allegation of a recent brutal beating combined with three separate threatening incidents satisfied the "imminent danger exception" to the "three strikes" rule under 28 U.S.C. § 1915(g)).

---

[3]  Despite the fact that Lumumba was attacked by different inmates on two other occasions, he does not allege that he is "particularly vulnerable" to attack for any reason.  *Farmer*, 511 U.S. at 831; *see id.* at 843 (suggesting that an inmate could show exposure to a sufficiently serious risk of harm if he proved that he belonged to "an identifiable group of prisoners who are frequently singled out for violent attack by other inmates").

However, the Court may take judicial notice of the present status of both Lumumba and Green as reported on the Vermont Department of Corrections' publicly available online "Offender Locator." *See Camarillo v. United States*, 497 F. App'x 422, 422–23 (5th Cir. 2012) (per curiam) (taking judicial notice of publicly available inmate locator service); *United States v. Robles-Ortega*, 336 F. App'x 824, 825 n.1 (10th Cir. 2009) (same); *Demis v. Sniezek*, 558 F.3d 508, 513 n.2 (6th Cir. 2009) (same); *Ochoa v. Connell*, No. 9:05-cv-1068 (GLS/RFT), 2007 WL 3049889, at *2 n.5 (N.D.N.Y. Oct. 18, 2007) (same).  According to the Offender Locator, Lumumba is presently incarcerated at the Southern State Correctional Facility in Springfield, Vermont,[4] while Green is currently under the supervision of Burlington Probation and Parole.  Offender Locator, http://doc.vermont.gov/offender-locator (last visited February 19, 2014).  In short, Lumumba and Green are now separated, and the alleged risk of harm for which Lumumba seeks injunctive relief is no longer present.  The Court should accordingly GRANT the State Defendants' Motion to Dismiss with respect to Lumumba's claim for injunctive relief.

## IV.   Leave to Amend

The Second Circuit has cautioned that district courts should not dismiss *pro se* complaints with prejudice without granting leave to amend at least once "'when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" *Chavis*, 618 F.3d at 170 (quoting *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991));

---

[4] That is consistent with the Springfield, Vermont mailing address listed on Lumumba's Notice of *Pro Se* Appearance, filed May 15, 2013.  (Doc. 2.)

*see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").  Nonetheless, leave to amend may be denied in certain circumstances, including futility or "repeated failure to cure deficiencies by amendments previously allowed."  *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (internal quotation marks omitted).

Here, it would be futile to amend the Complaint as against NWSCF because no amendment would change the fact that NWSCF is not a "person" for purposes of § 1983.  However, by naming different defendants or by adding more factual allegations, Lumumba may be able to state a plausible § 1983 claim.  Any amended filing should be entitled "Amended Complaint" and should contain all claims against all parties as it will supersede the original Complaint in all respects.  The Court should require that an Amended Complaint, if any, be filed within 30 days of its ruling on this Report and Recommendation.  Failure to so amend should result in dismissal with prejudice of all of Lumumba's § 1983 claims against the State Defendants.

## V.    Defendant Elijah Green

No motion is currently pending with respect to Defendant Elijah Green.  In fact, it appears from the docket that Green has not yet been served.  (*See* Docs. 9, 11.)  However, pursuant to 28 U.S.C. § 1915(e)(2), the Court has authority to dismiss sua sponte claims filed by *in forma pauperis* plaintiffs that are "based on an indisputably meritless legal theory."  *Denton v. Hernandez*, 504 U.S. 25, 32 (1992).  Here, for the reasons described below, Lumumba's § 1983 claim against Green is indisputably meritless, and the Court

may properly dismiss that claim notwithstanding the fact that Green has not been served. *See Gray v. Bagley*, Civil No. JFM-11-1117, 2011 WL 8227134, at *1 (D. Md. July 28, 2011) (granting defendants' motion to dismiss, including claims against non-moving defendant who had not been served).

To succeed on a § 1983 claim, a plaintiff must allege that the defendant acted "under color of state law." *Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013) (per curiam). At the time of the attack, Green was a Vermont prisoner; he was not a government employee or actor, and there is nothing to suggest otherwise in the Complaint. *See Lumumba*, 2013 WL 5915195, at *5 (concluding that Lumumba's § 1983 claim against another prisoner who attacked him—Haywood Mack—failed because Mack was not acting under color of state law). On its own motion, the Court should DISMISS Lumumba's § 1983 claim against Green.

To the extent that Lumumba's Complaint could be interpreted as including any state-law claims against Green, the Court should follow the approach taken in *Grimes v. Fremont General Corp.*, 785 F. Supp. 2d 269, 302 (S.D.N.Y. 2011), and await Lumumba's decision as to whether to file an Amended Complaint. If Lumumba fails to state a claim over which the Court has original jurisdiction, then the Court should decline to exercise supplemental jurisdiction over any state-law claims pursuant to 28 U.S.C. § 1367(c)(3). Conversely, if Lumumba amends to successfully allege a federal cause of action, then it may be appropriate to address Lumumba's state-law claims. In the latter

case, the first issue to be addressed would likely be the fact that Lumumba has still not responded to the Court's October 31, 2013 Order to Show Cause regarding the failure to complete service upon Green.  (*See* Doc. 11.)[5]

### Conclusion

The State Defendants' Motion to Dismiss (Doc. 12) should be GRANTED.  If the Court adopts this Report and Recommendation, Lumumba should be allowed 30 days to file an Amended Complaint.  Failure to file an Amended Complaint should result in dismissal with prejudice of all of Lumumba's § 1983 claims against the State Defendants.

The Court should sua sponte DISMISS Lumumba's § 1983 claim against Green. The Court should await Lumumba's decision as to whether to file an Amended Complaint and, if Lumumba fails to file an Amended Complaint that states a claim over which the Court has original jurisdiction, the Court should decline to exercise supplemental jurisdiction over any state-law claims against Green and DISIMSS those claims without prejudice.

---

[5]  At this time, I do not recommend dismissing all of Lumumba's claims against Green on that basis.  Pursuant to Fed. R. Civ. P. 4(m), the Court has the option of either dismissing the action against Green without prejudice, or ordering that service be made within a specified time.  If Lumumba does not file a sufficient Amended Complaint, then there would be no need to decide which option is appropriate in this case.

Dated at Burlington, in the District of Vermont, this 19th day of February, 2014.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision."  *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).